Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>25 FIGHTING ROOSTERS,<br><br>Defendants. | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

Plaintiff, United States of America, by its attorneys, Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Brian M. Donovan, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## I. NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following listed property for violations of the Animal Welfare Act, 7 U.S.C. § 2156 *et seq.* (criminalized by 18 U.S.C. § 49).

## II. THE DEFENDANT(S) *IN REM*

2. The Defendant Property consists of the following property:

a. Twenty-five (25) live fighting roosters, seized from 120 Buena Loop Road, Zillah, Washington

hereinafter collectively referred to as the "Defendant Roosters" when appropriate.

## III. JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendant Property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

## IV. BASIS FOR FORFEITURE

6. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 5 above.

7. The Animal Welfare Act, 7 U.S.C. § 2156(f)(1), defines "animal fighting venture" as "any event, in or affecting interstate or foreign commerce, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or entertainment." It is a violation of 7 U.S.C. § 2156 to "knowingly sell,

buy, possess, train, transport, deliver, or receive any animal for purposes of having the animal participate in an animal fighting venture," as well as "knowingly sponsor or exhibit an animal in an animal fighting venue."

8. The Animal Welfare Act provides that "[a] warrant to search for and seize any animal which there is probable cause to believe was involved in any violation of this section may be issued by any judge of the United States or of a State court of record or by a United States magistrate judge within the district wherein the animal sought is located." 7 U.S.C. § 2156(e). Animals "seized under such a warrant shall be held by the United States marshal or other authorized person pending disposition thereof by the court in accordance with this subsection." *Id.* While the animals are in custody, "necessary care including veterinary treatment shall be provided." *Id.*

9. The United States alleges that the Defendant Property is liable to condemnation and forfeiture to the United States, in accordance with the provisions of 7 U.S.C. § 2156(e). The statute states "any animal involved in any violation of this section shall be liable to be proceeded against and forfeited to the United States at any time on complaint filed in any United States district court or other court of the United States for any jurisdiction in which the animal is found and upon a judgment of forfeiture shall be disposed of by sale for lawful purposes or by other humane means, as the court may direct." 7 U.S.C. § 2156(e).

10. The costs incurred in caring for animals seized and forfeited under § 2156(e), "shall be recoverable from the owner of the animals (1) if he appears in such forfeiture proceeding, or (2) in a separate civil action brought in the jurisdiction in which the owner is found or transacts business." *Id.*

## V. BACKGROUND

11. Rooster fighting, or cockfighting, is a game or contest of chance in which a knife, a gaff or other sharp instrument is attached to the legs of gamecocks or roosters for the purpose of fighting each other. Fights usually end when one rooster is dead or refuses to continue to fight. If not killed during the fight, the losing rooster is almost always killed after the fight.

12. A series of cockfights conducted in a day is referred to as a "derby." A "derby" usually consists of dozens of individual cockfights lasting for several hours depending on the number of entries. During the late summer and fall, derbies generally do not take place because the roosters lose their feathers.

13. The term "rooster" is synonymous with the terms "gamecock," "cock," "bird," and "chicken." A mature gamecock resembles an ordinary rooster, except it has been surgically altered, trained and conditioned for fighting. The birds also generally receive vitamins, drugs, and other supplements to boost their strength and endurance.

14. Fights occur in a pit or ring surrounded by spectators and are supervised by a referee. The roosters are usually matched within a few ounces of each other prior

to fighting. A promoter generally makes arrangements and oversees activities at the derby. Handlers or "pitters" prepare and handle the birds during a fight. They may be the actual owner of the bird or someone paid to do the job. Concession workers sell food and drink.

15. In a derby, a number of entrants or cockfighters pay a predetermined entry fee to enter a pre-set number of roosters, usually about five per cockfighter. The cockfighter whose roosters win the most fights wins the purse, consisting of all the entry fees of participants. Approximately 10% is usually kept by the "house" or promoter(s). The purse is split among the winners when there is a tie. Sometimes the purse is divided between first-place and second-place winners. Side bets may occur between and among cockfighters and spectators that do not involve the overall purse.

16. The sponsor or promoter often also derive profits from admission fees and concession sales, including the sale of alcoholic beverages.

17. Individuals may profit from the sale or raffle of related paraphernalia, including but not limited to gaffs, tie cords, cages, training equipment, medications, and veterinary supplies.

18. It is common for cockfighters to possess cockfighting paraphernalia used to exercise, train, restrain, and condition their birds, including vitamins and supplements; drugs (including but not limited to methamphetamine and cocaine, sometimes given to roosters as stimulants); veterinary supplies; training devices;

knives (blades, gaffs, etc.); scales for weighing roosters; pit or arena; straps, tape, or waxed string; cages; boxes for transporting roosters; breeding records; and trophies.

## VI. FACTS

19. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and the Drug Enforcement Administration ("DEA") conducted a long-term investigation into into the Continuing Criminal Enterprise of La Nuestra Familia and the various conspiracies individuals have engaged in to support and further La Nuestra Familia. During the investigation, ATF and DEA learned that Fernando VILLEGAS and Jose Alfredo Chavez ARREDONDO, were participating in illegal interstate cockfighting.

20. The investigation revealed multiple Snapchat videos taken and/or posted by ARREDONDO over a period of several months showed VILLEGAS assisted ARREDONDO in training live roosters to fight.

21. On March 16, 2024, a Snapchat conversation was intercepted between ARREDONDO and VILLEGAS (username "fern_ando154"). Initially, ARREDONDO sent multiple "selfies" of his face to VILLEGAS as well as photo of bare dirt with a plywood wall in the background along with a cage and someone holding a rooster. ARREDONDO then sent VILLEGAS a video of himself and Defendant fighting two roosters. ARREDONDO and VILLEGAS were each holding a rooster. They met the roosters by bringing them close together, then backing away and then tossed them towards each other. The roosters begam to fight, while VILLEGAS and ARREDONDO watched. On 2 separate occasions, VILLEGAS and

ARREDONDO picked up the roosters, checked them for injuries, and then dropped them again allowing them to resume fighting. About 5 minutes later, a Snapchat conversation was intercepted between ARREDONDO and VILLEGAS wherein ARREDONDO sent another, different video of himself and VILLEGAS again fighting two roosters.

22. Intercepted communications as well as physical surveillance showed that ARREDONDO participated in an animal fighting venture, a cockfighting derby, on April 7, 2024, in Mattawa, Washington, and fought several live roosters at the event. In the early morning hours of April 7, 2024, ARREDONDO was surveilled traveling to a cockfighting derby in Mattawa, Washing. During the drive, a call was intercepted wherein ARREDONDO advised he was transporting 6 roosters. VILLEGAS helped ARREDONDO exhibit his fighting roosters at this derby. The cockfighting arena is believed to be located at 21222 Road 24.7 SW in Mattawa. A special agent obtained an aerial view of the property. They observed vehicles (including trucks with trailers), a structure covered by tarps, and subjects carrying birds. Some birds were still moving and placed into cages and/or vehicles, and other birds appeared to get thrown into a barrel near the arena opening. Later that same day, in an intercepted communication, ARREDONDO advised that he had three losses and two wins during the derby.

23. On April 18, 2024, multiple search warrants were executed. Law enforcement agents searched 191 Buena Loop Road, Zillah, Washington, which is the residence of ARREDONDO. This was the base for ARREDONDO's drug operations,

as well as the location for housing and training numerous roosters for unlawful cockfighting derbies.

24. On April 18, 2024, law enforcement agents also searched 120 Buena Loop Road, Zillah, Washington, which is the residence of Fernando VILLEGAS. This property is across the road from ARREDONDO's residence. Upon information and belief, at this location and/or at ARREDONDO's residence, VILLEGAS assisted ARREDONDO in physically preparing and training roosters for cockfights. A trash-pull at this premises prior to the search included a bag containing approximately a dozen unhatched chicken eggs and a piece of plywood with numerous chicken feathers stuck to it. When law enforcement executed the search warrant, throughout the residence were multiple items of cockfighting paraphernalia, chicken feed, cock fighting spurs, and cockfighting training props along with multiples firearms and assorted ammunition. Multiple dead chickens were located around the property. Additionally, multiple rooms in the residence were used to incubate and hatch chickens.

25. The Defendant Roosters were seized from VILLEGAS's residence at 120 Buena Loop Road. The fighting roosters were placed in custody of the animal rescue group Heartwood Haven, located in Roy, Washington. The seized fighting roosters received veterinary care and evaluations.

26. An additional sixteen (16) roosters and twelve (12) hens were voluntarily surrendered by the owner/occupants of 120 Buena Loop Road to Heartwood Haven.

These twenty-eight (28) voluntarily surrendered roosters and hens were not seized by the United States and not in the custody of the United States.

## VII. CONCLUSION

Based on the foregoing, the United States alleges that the Defendant Roosters are subject to forfeiture to the United States pursuant to 7 U.S.C. § 2156, because the birds constitute animals being forced to participate in an animal fighting venue. Further, the United States of America seeks an award of costs incurred for care of the Defendant Roosters as against the owner of the animals.

WHEREFORE, Plaintiff requests that the Clerk of the Court issue a warrant for the arrest of the Defendant property; that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property; that the Defendant property be forfeited and condemned to the United States of America; that Plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems proper and just.

DATED this 1st day of November 2024.

Vanessa R. Waldref
United States Attorney

*s/ Brian M. Donovan*
Brian M. Donovan
Assistant United States Attorney

//

//

//

VERIFICATION

I, David R. Steen, hereby verify and declare under penalty of perjury that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, in Yakima, Washington, that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing information is true and correct.

DATED this 1st day of November 2024.

David R. Steen, Special Agent
Bureau of Alcohol, Tobacco, Firearms
and Explosives